IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-CR-0126-CVE |
| ) | (16-CV-0413-CVE-TLW) |
| GARRY DON SCOTT, JR., ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Before the Court is defendant Garry Don Scott, Jr.'s motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 127). Section 2255 provides that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." The Tenth Circuit Court of Appeals appointed the Federal Public Defender for the Northern District of Oklahoma to represent defendant, and defendant is represented by counsel.

**I.**

On September 9, 2009, a grand jury returned an indictment charging defendant with being a felon in possession of a firearm in violation 18 U.S.C. § 922(g)(1). United States of America v. Garry Don Scott, Jr., 09-CR-126-CVE (N.D. Okla) (Scott I). The indictment identified 11 prior felony convictions and cited the Armed Career Criminal Act, 18 U.S.C. § 924(e) (ACCA). Scott I, Dkt. # 2. Under the ACCA, defendant would be subject to a statutory mandatory minimum sentence of 15 years and a possible maximum sentence of life imprisonment if he had three prior convictions for a violent felony or a serious drug offense. The Court appointed Stephen Greubel to

represent defendant. Dkt. # 8. The government filed a motion to hold defendant in custody pending trial, but defendant was released pending trial following a detention hearing. Scott I, Dkt. ## 11, 12, 13. On November 12, 2009, defendant pled guilty and he acknowledged that he faced a statutory mandatory minimum sentence of 15 years. Dkt. # 30, at 3; Dkt. # 31, at 9. Defendant's sentencing hearing was set for February 11, 2010, and the Court made the necessary findings to allow defendant to remain at liberty pending sentencing. Dkt. # 27. The sentencing hearing was continued to April 30, 2010, but defendant failed to appear at the sentencing hearing and an arrest warrant was issued. Dkt. ## 42, 43.

Defendant was arrested on May 28, 2010, and he was found in possession of a rifle. His sentencing hearing was delayed to allow the government time to seek a second indictment against him. Scott I, Dkt. ## 55, 56. In a second indictment, defendant was charged with failure to appear (count one) and being a felon in possession of a firearm (count two). United States of America v. Garry Don Scott, Jr., 10-CR-87-CVE (N.D. Okla.) (Scott II), Dkt. # 4. Greubel filed a motion to withdraw as defense counsel because there had been a complete breakdown in the attorney-client relationship. Scott I, Dkt. # 59. The Court granted Greubel's motion to withdraw and appointed Lance Hopkins to represent defendant. Scott I, Dkt. # 60. On July 27, 2010, defendant pled guilty to counts one and two in Scott II, and a sentencing hearing for all pending charges against defendant was set for September 28, 2010. Scott II, Dkt. # 13.

A presentence investigation report (PSR) was prepared and all of the counts in both indictments were grouped under United States Sentencing Guidelines (USSG) § 3D1.2(d). Defendant's advisory guideline range would be determined by the highest offense level of all three counts in both cases, and the count with the highest offense level was count one in Scott I.

Defendant's base offense level under USSG § 2K2.1 was 26, because defendant had at least two prior felony convictions for crimes of violence and the offense involved a firearm described in 26 U.S.C. § 5845(a).[1] Defendant received a four level enhancement for the number of firearms involved in the offense and a two level enhancement for obstruction of justice, resulting in an adjusted offense level of 32. The PSR noted that defendant had six prior convictions[2] that qualified as violent felonies under the ACCA:

- Kidnapping, Osage County District Court, Case No. CF-89-140

- Kidnapping, Osage County District Court, Case No. CF-89-162

- Assault and Battery with a Dangerous Weapon after Former Conviction of a Felony, Kay County District Court, Case No. CRF-90-396

- Assault and Battery on a Deputy Sheriff after Former Conviction of a Felony, Kay County District Court, Case No. CRF-90-396

- Assault and Battery on a Police Officer after Former Conviction of a Felony, Kay County District Court, Case No. CRF-91-10

- Escape from Arrest, Ottawa County District Court, Case No. CRF-89-212.

This increased defendant's offense level to 34 under USSG § 4B1.4. As to defendant's criminal history category, he had 15 criminal history points and his criminal history category was VI. Defendant's advisory guideline range was 262 to 327 months. The Court sentenced defendant to 250 months imprisonment as to count one in Scott I and count two in Scott II, and the sentences were ordered to run concurrently. Dkt. # 33. Defendant was sentenced to 12 months as to count one

---

[1] Defendant possessed a fully automatic AK-47 firearm and this weapon qualified as a "machine gun" under 26 U.S.C. § 5845(a).

[2] The government points out that defendant was also convicted of second degree burglary, even though this was not specifically identified as a violent felony in the PSR.

of Scott II, and this sentence was ordered to run consecutively as to any other sentence of imprisonment imposed. Id. The total sentence was 262 months.

The judgment and commitment was filed in both cases on November 1, 2010. Scott I, Dkt. # 82; Scott II, Dkt. # 36. Defendant did not file a notice of appeal and his conviction became final on November 15, 2011 when his time to file a direct appeal expired. On October 12, 2011, defendant filed a § 2255 motion alleging that he received ineffective assistance of counsel in connection with his guilty pleas in both cases, that his convictions should be set aside due to entrapment, and that counsel for the government committed misconduct. Scott I, Dkt. # 83; Scott II, Dkt. # 37. The Court denied defendant's § 2255 motion and defendant did not appeal the denial of his § 2255 motion. Defendant subsequently filed several motions that were construed as second or successive § 2255 motions, and all of the second or successive § 2255 motions were dismissed for lack of subject matter jurisdiction. See Scott I, Dkt. # 118; Scott II, Dkt. ## 53, 72, 76.

On May 27, 2016, defendant filed a motion seeking authorization from the Tenth Circuit to proceed with a second or successive § 2255 motion seeking relief under the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015). In Welch v. United States, 136 S. Ct. 1257 (2016), the Supreme Court held that Johnson is retroactively applicable to cases on collateral review. Johnson was decided by the Supreme Court on June 26, 2015, and a motion seeking relief under Johnson would be timely if it were filed no later than June 27, 2016.[3] See Dodd v. United States, 545 U.S. 353 (2005) (one year statute of limitation under § 2255 (f)(3) runs from the date that

---

[3] In calculating the one year statute of limitations under § 2255, federal courts refer to Fed. R. Civ. P. 6(a) to compute the applicable deadline. United States v. Hurst, 322 F.3d 1256, 1260 (10th Cir. 2003). Under Rule 6(a)(1)(C), if a deadline falls on a Saturday, Sunday, or legal holiday, the time period continues to run until the next day that is not a weekend or legal holiday. June 26, 2016 was a Sunday and defendant's deadline to file a § 2255 motion asserting a Johnson claim was June 27, 2016.

4

the Supreme Court initially recognized a new constitutional right, rather than the date the new right was made retroactive to cases on collateral review). The Tenth Circuit granted defendant's request to file a second or successive § 2255 motion and stated that the filing date of defendant's authorized second or successive § 2255 motion was May 27, 2016. Defendant's § 2255 motion is timely and the Court ordered plaintiff to respond to the motion. Plaintiff has filed a response in opposition to defendant's request for a reduction of his sentence. Scott I, Dkt. # 134. Defendant has filed a reply in support of his § 2255 motion, and defendant's § 2255 motion is at issue. Scott I, Dkt. # 135.

**II.**

Defendant argues that none of his prior convictions qualifies as a violent felony in light of the Supreme Court's decision in Johnson, and he asks the Court to set this matter for a resentencing hearing. The government responds that defendant still has at least three convictions that qualify as violent felonies under the ACCA and it asks the Court to deny defendant's § 2255 motion. The parties agree that defendant's escape conviction no longer qualifies as a violent felony.[4] Scott I, Dkt. # 131, at 20-21; Scott I, Dkt. # 134, at 13.

Defendant was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and, under 18 U.S.C. § 924(a)(2), the maximum punishment for this offense is 10 years

---

[4]  In Chambers v. United States, 555 U.S. 122, the Supreme Court held that an Illinois criminal statute criminalizing escape from a penal institution was not a violent felony under the "elements" clause, because the statute included a "failure to report" crime that did not involve the use of physical force. The Tenth Circuit had previously held every escape presented a serious potential risk of physical injury and treated escape convictions as violent felonies under the residual clause. United States v. Moore, 401 F.3d 1220, 1226 (10th Cir. 2005). OKLA. STAT. tit. 21, § 444 states that it is "unlawful for any person, after being lawfully arrested or detained by a peace officer, to escape or attempt to escape," and there is no requirement that any amount of force be used during the escape. The Oklahoma statute necessarily includes non-violent escape attempts and a conviction under the statute is not a violent felony under the ACCA based on the reasoning in Chambers.

imprisonment. However, if a defendant has three or more prior convictions that qualify as a violent felony or a serious drug offense, the defendant is subject to a statutory mandatory minimum sentence of 15 years and a possible maximum sentence of life imprisonment under the ACCA. Prior to Johnson, the ACCA defined "violent felony" as follows:

> (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that --
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another;
>
> (ii) is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another
> . . . .

18 U.S.C. § 924(e)(2). The last section of this definition treating a prior conviction as a violent felony if it "involves conduct that presents a serious potential risk of physical injury to another" is known as the "residual clause." In Johnson, the Supreme Court found that the residual clause was unconstitutionally vague in violation of the Due Process Clause of the Fifth Amendment. Johnson, 135 S. Ct. at 2556-57. Johnson does not impact the validity of any other provision of the ACCA, and the Supreme Court stated that "[t]oday's decision does not call into question application of the Act to the four enumerated offenses [burglary, arson, extortion, or involves the use of explosives], or the remainder of the Act's definition of a violent felony." Id. at 2563. The Supreme Court subsequently determined that Johnson is retroactively applicable to cases on collateral review. Welch, 136 S. Ct. at 1268.

Courts generally apply a categorical approach to determine if a prior conviction qualifies as a predicate offense under the ACCA. Taylor v. United States, 495 U.S. 575, 588-89 (1990). Under

the categorical approach, courts "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime –i.e., the offense as commonly understood." Descamps v. United States, 133 S. Ct. 2276, 2281 (2013). A prior conviction qualifies as a predicate offense under the ACCA "only if the statute's elements are the same as, or narrower than, those of the generic offense." Id. The Tenth Circuit has described the application of the categorical approach as follows:

> [D]etermining whether a prior conviction falls under the ACCA, we apply a "categorical approach," generally looking only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction. That is, we consider whether the elements of the offense are of the type that would justify its inclusion within the ACCA, without inquiring into the specific conduct of this particular offender. To satisfy this categorical approach, it is not necessary that every conceivable factual offense covered by a statute fall within the ACCA. Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, qualifies under the ACCA as a violent felony or a serious drug offense.

United States v. Smith, 652 F.3d 1244, 1246 (10th Cir. 2011). A prior conviction may be treated as a violent felony under the "elements" clause if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(I). The Supreme Court has interpreted "physical force" to mean "violent force–that is, force capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S. 133, 140 (2010). In applying the "elements" clause, a court must consider only "whether the statute of conviction required proof of the use, threatened use, or attempted use of physical force." United States v. Maldonado-Palma, ___ F.3d ___, 2016 WL 6211803 (10th Cir. Oct. 25, 2013).

**A.**

Defendant argues that his convictions for assault and battery of a deputy sheriff and assault and battery of a police officer do not qualify as violent felonies under the "elements" clause, because

7

the amount of physical force required to commit the offense is so minimal that the crimes cannot be treated as a violent felony under the categorical approach. The government responds that these prior convictions are no longer likely to qualify as violent felonies under the ACCA.

Defendant identifies OKLA. STAT. tit. 21, § 694.B as the statute of conviction, and this statute provides that "[e]very person who, without justifiable or excusable cause knowingly commits battery or assault upon the person of a police officer, sheriff, deputy sheriff . . . while said officer is in the performance of his duties" shall be guilty of a felony. The Oklahoma Uniform Jury Instructions (OUJI) direct courts to use the definition of assault and battery contained in OUJI criminal instructions 4-2 and 4-3 for the offense of committing an assault or battery on a police officer. OUJI defines battery as "any willful and unlawful use of force or violence upon the person of another" and assault is "any willful and unlawful attempt or offer to do a bodily hurt to another with force or violence." The Oklahoma Court of Criminal Appeals has stated that "only the slightest force or touching is necessary" to commit the offense of assault and battery as a matter of Oklahoma law. Steele v. State, 778 P.2d 929, 931 (Okla. Crim. App. 1989). In United States v. Williams, 559 F.3d 1143 (10th Cir. 2009), the Tenth Circuit found that the crime of assault and battery on a police officer was a violent felony under the residual clause, even though the slightest touching could constitute assault or battery, because the crime was similar in kind to the crimes list in the enumerated offenses clause and there was a serious risk that even minimal physical contact with a police officer could result in a highly dangerous situation. Id. at 1148-49. The crime of assault and battery on an employee of the Office of Juvenile Affairs was also found to be a violent felony under the residual clause, but the Tenth Circuit noted that the statute reached behavior that does not satisfy

the "elements" clause due to the minimal amount of physical force required as a matter of Oklahoma law to commit the offense. Smith, 652 F.3d at 1247.

The Court finds that defendant's prior convictions for assault and battery on a police officer or deputy sheriff no longer qualify as violent felonies under the ACCA, because these convictions qualified as violent felonies only because of the residual clause. The offense of assault and battery as under Oklahoma law can be committed by even the "slightest touching," even if there is no intent to cause physical injury. The Tenth Circuit recognized in Smith that mere touching is not sufficient to satisfy the "physical force" requirement of the ACCA, but mere touching satisfies the requirement for force under Oklahoma assault and battery statutes. Smith, 652 F.3d at 1247. The generic offense of assault and battery on a police officer or deputy sheriff does not require the use of any force, and the offense does not contain as an element "the use, attempted use, or threatened use of physical force against the person of another." Defendant's two convictions for assault and battery on a police officer are not violent felonies in light of Johnson.

## B.

The parties dispute whether a conviction for assault and battery with a dangerous weapon under Oklahoma law can still be considered a predicate offense under the ACCA. Defendant argues that the Court cannot apply the modified categorical approach in light of the Supreme Court's decision in Mathis v. United States, 136 S. Ct. 2243 (2016), and defendant focuses on the wide range of items that may be treated as dangerous weapons to support his argument that the statute of conviction necessarily includes acts that do not involve the use of physical force. The government argues that the Tenth Circuit has considered the specific statute at issue and has found that courts

can apply the modified categorical approach to determine if the crime had as an element the use, attempted use, or threatened use of force.

Defendant was convicted of assault and battery with a dangerous weapon and the statute in effect at the time provided:

> Every person who, with intent to do bodily harm and without justifiable or excusable cause, commits any assault, battery, or assault and battery upon the person of another with any sharp or dangerous weapon, or who, without such cause, shoots at another, with any kind of firearm or air gun or other means whatever, with intent to injure any person, although without intent to kill such person or to commit any felony . . . is guilty of a felony . . . .

OKLA. STAT. tit. 21, § 645 (1991). In an unpublished decision, the Tenth Circuit noted that the statute has divisible sets of elements and it contains two separate offenses. United States v. Mitchell, ___ F. App'x ___, 2016 WL 3569764 (June 29, 2016). The statute "criminalizes an 'assault, battery, or assault and battery' with a sharp or dangerous weapon, and in the alternative it criminalizes 'shoot[ing] at another' with a gun or similar means." Id. at *4. In support of this conclusion, the Tenth Circuit cited a decision by the Oklahoma Court of Criminal Appeals describing the separate offenses contained in § 645. Davis v. State, 354 P.2d 466, 470 (Okla. Crim. App. 1960). In Mathis, the Supreme Court explained that application of the modified categorical approach applies when a single statute "lists elements in the alternative . . . and thereby define[s] multiple crimes." Mathis, 136 S. Ct. at 2249. Under the modified categorical approach, "a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." Id. This is distinguishable from a situation in which a statute contains a single offense but lists alternative means for committing an element of that offense, because in

such a situation the sentencing court must consider only the elements of the statute of conviction when determining if an offense qualifies as a predicate offense under the ACCA. Id. at 2250.

The Court will initially apply the modified categorical approach to determine whether defendant committed an assault and battery with a dangerous weapon or the alternative firearm offense contained in § 645. The amended information filed in Kay County District Court states that "said defendant, on or about the 7th day of December . . . did unlawfully, willfully, intentionally and feloniously without justifiable or excusable cause commit an assault on one BUDDY THOMAS with a certain dangerous weapon . . . ." Scott I, Dkt. # 134-3, at 2. The "dangerous weapon" was a Winchester Model 94 30-30 rifle, but defendant was charged with assault and he was not accused of discharging the firearm. Id. Applying the modified categorical approach, the Court finds that defendant was charged with assault and battery with a dangerous weapon and, even though the weapon was a firearm, he was not charged with discharging the firearm with intent to kill or commit a felony.

The Court must now apply the categorical approach and consider only the elements of the charged offense to determine if the "dangerous weapon" offense contained in § 645 requires the "use, threatened use, or attempted use of physical force." United States v. Maldonado-Palma, ___ F.3d ___, 2016 WL 6211803 (10th Cir. Oct. 25, 2016). Defendant's argument is focused solely on the "dangerous weapon" element of the offense, and he claims that the definition of "dangerous weapon" is so open-ended that the offense necessarily includes conduct that does not involve the

11

use of physical force.[5] The Court disagrees and finds that the relevant inquiry is the amount of force, rather than the item used, that must be considered in determining whether the offense involves the use of physical force. This precise issue was considered in Mitchell and the Tenth Circuit found that § 645 "criminalizes an intentional attempt or threat to commit violence on another–that is, either an attempted-battery assault or an apprehension-causing assault–with a weapon capable of causing great bodily harm." Mitchell, 2016 WL 3569764 at *6. The Oklahoma Court of Criminal Appeals has stated that specific intent to cause bodily harm is an element of an offense under § 645. James v. State, 599 P.2d 411, 412 (Okla. Crim. App. 1979). The Tenth Circuit has interpreted the "elements" clause to include conduct that would reasonably cause apprehension of physical injury, even if the statute requires only a general intent that a defendant's act would result in harm to the victim. United States v. Ramon-Silva, 608 F.3d 663, 672-73 (10th Cir. 2010). The Court has already discussed the minimal level of force involved for ordinary assault and battery under Oklahoma law, but the use of a dangerous weapon is likely to place a person in apprehension of serious physical injury. Mitchell, 2016 WL 3569764 at *5. The Court notes that Mitchell is unpublished and not precedential but finds that Mitchell is persuasive authority, and the Court finds that § 645 is a violent felony under the "elements" clause. The offense involves the specific intent to cause physical injury and a victim of the generic offense of assault and battery with a dangerous

---

[5] Defendant is correct that "dangerous weapon" is defined broadly under Oklahoma law. A defendant may be convicted even if the "weapon" used is not "dangerous per se," and it is the manner in which the object is used that must be considered in determining whether the object is a "dangerous weapon." Smith v. State, 152 P.2d 279, 281 (Okla. Crim. App. 1944). Items such as a beer bottle, leather strap, a chair, a stick, a clock, and an iron rod have been treated as dangerous weapons based on their use. Bald Eagle v. State, 355 P.2d 1015, 1017 (Okla. Crim. App. 1960). However, the broad definition of "dangerous weapon" does not by itself mean that the generic offense necessarily includes conduct that would not constitute a violent felony.

weapon would be in apprehension of receiving serious physical injury due to the use of a dangerous weapon. Defendant's prior conviction for assault and battery with a dangerous still qualifies as a violent felony.

## C.

Defendant argues that his prior convictions for kidnapping can no longer be considered violent felonies, because the statute of conviction does not require the use of force to commit the offense and kidnapping does not fall under the enumerated offense clause of the ACCA. The government responds that the Oklahoma kidnapping statute is divisible and the crime may be committed by "forcibly seiz[ing]" the victim, and the government asks the Court to look at certain documents to determine what type of kidnapping offense was alleged against defendant.

Defendant was twice convicted of kidnapping in violation of Oklahoma law and the statute of conviction in effect at the time of defendant's convictions defined the offense as follows:

> Any person who, without lawful authority, forcibly seizes and confines another, or inveigles or kidnaps another, with intent, either:
>
> First. To cause such other person to be secretly confined or imprisoned in this State against his will; or
>
> Second. To cause such other person to be sent out of this State against his will; or,
>
> Third. To cause such person to be sold as a slave, or in any way held to service against his will, is punishable by imprisonment . . . not exceeding ten years.

OKLA. STAT. tit. 21, § 741 (1991). The statute can clearly be violated in different manners but the question before the Court is whether these are simply alternative means of violating a specific element of the statute or whether the statute contains separate offenses.

Defendant relies heavily on the Tenth Circuit's decision <u>United States v. Phelps</u>, 17 F.3d 1334 (10th Cir. 1994), in which the Tenth Circuit found that a Missouri kidnapping statute was a

13

violent felony under the residual clause. Defendant argues that the Tenth Circuit adopted the reasoning in United States v. Sherbondy, 865 F.3d 996 (9th Cir. 1988), which was "that although the crime of kidnapping did not contain the use of force as an essential element of the crime, it nonetheless entailed a 'serious potential risk of physical injury' to the victim,'" and a conviction under the Missouri kidnapping statute was a violent felony under the residual clause. Scott I, Dkt. # 131, at 10 (quoting Phelps, 17 F.3d at 1342). The Court disagrees with defendant's assertion that Phelps broadly applies to kidnapping convictions under Oklahoma law, and the analysis in Phelps was confined to the application of the residual clause to the Missouri statute at issue. Phelps did not create a general rule that kidnapping under the law of any state did not contain the use, attempted use, or threatened use of force, and the Court will examine the Oklahoma kidnapping statute to determine what amount of force, if any, is required to commit the generic offense of kidapping under Oklahoma law.

The government argues that it is not clear from the statutory language and case law if the statute is divisible and the Court may "peek" at certain documents for the sole purpose of determining whether the listed items are elements or means. Scott I, Dkt. # 134, at 18. In particular, the government is focused on the "forcibly seizes and confines another, or inveigles or kidnaps another" language of § 741 and argues that these are alternative elements of a kidnapping offense. Under Mathis, the Court should initially look to state court decisions to determine if statutory alternatives are elements or means. Mathis, 136 S. Ct. at 2256. The government states that the Oklahoma Court of Criminal Appeals has not definitively established whether the phrase "forcibly seizes and confines another, or inveigles or kidnaps another" lists alternative elements or means. Scott I, Dkt. # 134, at 18. The Court has independently researched this issue and has not located any

state court decision that would conclusively resolve whether the alternatives are means or elements. The Court has reviewed the jury instructions that would be used in Oklahoma courts in a kidnapping case and the OUJI instruction for kidnapping states that the state must prove that a defendant:

First, unlawfully;

Second, seizes/confines/inveigles/decoys/kidnaps/abducts/(carries away);

Third, another person/

Fourth, with the intent to (confine that person)/(imprison that person)/(send that person out of the State)/(sell that person as a slave)/(hold that person to service): against that person's will.

OUJI 4-110. The commentary to the instruction states that the "second element lists the activities prohibited by the kidnapping statute." However, Oklahoma law is clear that the state must put a defendant on notice in the charging document as to what aspect of the fourth element the defendant is accused of violating because each alternative is a separate offense. Perry v. State, 853 P.2d 198, 201 (Okla. Crim. App. 1993). This suggests that the alternatives listed in the second element are means rather than elements, because it is not clear that the state must specifically identify in the charging document which type of unlawful act committed by the defendant allegedly violated the second element of the offense as defined in OUJI 4-110. Due to the existence of some uncertainty in the state law, the Court finds that this is an appropriate case to "peek" at the charging document, and such a "peek" makes it apparent the alternatives listed in the second element are means. The information alleges that defendant did "forcibly seize, kidnap and confine" the victim. Scott I, Dkt. # 134-2, at 2. The statute states that no person may "forcibly seize[] and confine[] another, or inveigle[] or kidnap[] another," and the information alternatively alleges that defendant forcibly seized, kidnapped, and confined the victim without exclusively choosing one of the statutory

15

options. This supports a finding that the phrase "forcibly seizes and confines another, or inveigles or kidnaps another" lists means for committing the offense of kidnapping and that each alternative is not a separate element under the statute.

The Court concludes that the phrase "forcibly seizes and confines another, or inveigles or kidnaps another" lists means, rather than elements, and the Court must apply the categorical approach to determine if the generic offense of kidnapping as described in the statute necessarily involves the use or threatened use of physical force. The term "forcibly seizes" clearly implies the use of physical force and it is certainly possible for the crime of kidnapping to involve physical force. However, the crime may also be committed by inveiglement and this would not require the use of any force, because inveiglement involves luring or enticing the victim instead of any use of physical force. The elements of kidnapping under § 741 do not necessarily require the use of any physical force and a conviction under § 741 is not a violent felony under the ACCA. Defendant's two convictions for kidnapping will not be treated as violent felonies.

**D.**

The government also argues that defendant was convicted of second degree burglary and this could be a violent felony under the ACCA, but the Court finds that it is unnecessary to consider this issue. The Court has determined that defendant's escape conviction, two convictions for assault and battery on a police officer or deputy sheriff, and two convictions for kidnapping are not violent felonies. Defendant's conviction for assault and battery with a dangerous weapon still qualifies as a violent felony but, even if his second degree burglary conviction is found to be a violent felony, he will have only two prior convictions that are violent felonies and he is not eligible for sentencing under the ACCA. The maximum sentence that can be imposed under § 924(a) is 10 years, or 120

months. Defendant was sentenced to 250 months as to each of his convictions under § 922(g) and he received a sentence in excess of the statutory maximum, and he is entitled to resentencing in light of the Supreme Court's decision in Johnson.

**IT IS THEREFORE ORDERED** that defendant Garry Don Scott, Jr.'s motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 127) is **granted**. The judgment and commitment (Dkt. # 82) is **vacated**, and this case is set for a **resentencing hearing on February 17, 2017 at 9:30 a.m.**[6]

**IT IS FURTHER ORDERED** that the government shall take all necessary actions to ensure defendant's presence at the resentencing hearing.

**DATED** this 17th day of November, 2016.

*[signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[6] The Court has set the resentencing hearing approximately 90 days out to allow the parties time to bring defendant to the Northern District of Oklahoma and for defendant to confer with his counsel to make any appropriate objections to the PSR. However, the parties may ask the Court to accelerate the sentencing hearing if they do not need the full amount of time to prepare for sentencing.